IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DIANA G. WOTRING,                    :
                                     :        Case No. 2:14-CV-998
                Plaintiff,           :
                                     :        JUDGE ALGENON L. MARBLEY
        v.                           :
                                     :        Magistrate Judge Kemp
COMMISSIONER OF                      :
SOCIAL SECURITY,                     :
                                     :
                Defendant.           :

## OPINION & ORDER

## I.    INTRODUCTION

This matter is before the Court for consideration of Plaintiff's Objections to the

Magistrate Judge's June 3, 2015 **Report and Recommendation** (Doc. 19), recommending that

the Court overrule the Plaintiff's Statement of Errors.  (Doc. 20.)  Upon independent review by

the Court, and for the reasons set forth below, Plaintiff's Objections are hereby **OVERRULED**.

The Court **ACCEPTS** and **AFFIRMS** the Magistrate Judge's **Report and Recommendation**.

## II.    BACKGROUND

Plaintiff Diana G. Wotring applied for disability insurance benefits on April 10, 2012,

alleging disability beginning October 15, 2011.  Plaintiff's application was denied initially and

upon reconsideration.  After a hearing on October 17, 2013, an Administrative Law Judge

("ALJ") denied benefits on November 21, 2013, finding that Plaintiff was not disabled.  In his

opinion denying benefits, the ALJ conducted the required five-step sequential analysis for a

disability-benefits claim. *See* 20 C.F.R. § 404.1520.[1]  The ALJ determined at step one that

---

[1] The five sequential steps are as follows:

1

Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 15, 2011.  At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, fibromyalgia, depression, and anxiety.  At step three, the ALJ determined that the impairments did not meet or medically equal one of the listed impairments described in 20 C.F.R. part 404, subpart P, appendix 1.  Prior to step four[2], the ALJ found that Plaintiff has the following residual functional capacity ("RFC"):

---

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled....

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled....

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled....

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled....

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled....

20 C.F.R. § 404.1520(a)(4).

---

[2] "Before we go from step three to step four, we assess your residual functional capacity. . . .  We use this residual functional capacity assessment at both step four and step five when we evaluate

> [T]he claimant has the residual functional capacity to lift and carry twenty pounds occasionally, ten pounds frequently; stand and walk six hours in an eight hour workday; sit six hours in an eight hour workday, unlimited pushing and pulling except as defined by the ability to lift and carry; occasionally climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch and crawl; limited to simple routine, repetitive tasks with no strict time or production demands; have occasional superficial contact with supervisors, co-workers and the general public in a relatively static work environment with static work processes and procedures.

(Record, Doc. 8 at 41.)  At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work as a department manager.  At step five, the ALJ found that given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff was capable of performing other jobs requiring a light exertional level, including housekeeper/cleaner, marker, and laborer.

The Appeals Council denied Plaintiff's request for review on June 9, 2014, and adopted the ALJ's decision as the Commissioner's final decision.  Plaintiff filed this action in the United States District Court for the Southern District of Ohio, alleging in her Statement of Errors that the ALJ erred by: (1) failing to give good reasons for rejecting the opinion of Plaintiff's treating physician; (2) failing to acknowledge that the plaintiff's treating physician, Dr. Mina Yazdanbakhsh, had authored the 2013 physical capacity evaluation; and (3) giving more weight to the non-examining state agency doctors than to the consultative psychological examiner, Dr. Lari Meyer.  (Doc. 20.)

On June 3, 2015, the Magistrate Judge issued a Report and Recommendation, recommending that this Court overrule Plaintiff's Statement of Errors.  (Doc 19.)  Plaintiff

---

your claim at these steps." 20 C.F.R. § 404.1520(a)(4); *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 28, n. 3 (6th Cir. 2009).

objected to the Magistrate Judge's Report and Recommendation.  The relevant facts concerning the Plaintiff's residual functional capacity are thoroughly set forth in the Magistrate Judge's Report and Recommendation; facts that are relevant to this Court's decision will be incorporated into the analysis below.

### III.    STANDARD OF REVIEW

This Court, upon objection, is required to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b).  The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)).

Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ellis v. Schweicker*, 739 F.2d 245, 248 (6th Cir. 1984).  In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984).  The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter, Comm'r of Soc. Sec.*, 246 F.3d 762, 772 (6th Cir. 2001).

Additionally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).  "An ALJ's

failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

## IV.     ANALYSIS

Plaintiff objects to the Magistrate Judge's Report and Recommendation on three grounds. The Court addresses each in turn.

### A.   Weight Given to the Treating Physician's Opinion

Plaintiff first objects that the ALJ failed to evaluate Dr. Yazdanbakhsh's opinion as required by the treating source rule and to provide good reasons for rejecting her opinion.  After treating Plaintiff at the Chillicothe Acute Care Clinic, Dr. Yazdanbakhsh completed a physical capacity evaluation in which she opined that Plaintiff could not walk or stand for longer than two hours or sit for longer than four hours in an eight-hour workday; lift more than 10 pounds; or use her hands for repetitive pushing and pulling and fine manipulation.  (R. 463-64.)

Generally, an ALJ gives more weight to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ."  20 C.F.R. § 404.1527(c)(2).  An ALJ "must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'"  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)).  In *Wilson*, the Sixth Circuit elaborated that

if the ALJ does not give controlling weight to the opinion of a treating source, she "must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion."  *Id.*

If the ALJ determines that the treating physician's opinion is not supported by medical evidence or is inconsistent with other substantial evidence, "the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for [the] rejection."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *see* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").  Although there is no requirement that the ALJ expressly consider each of the *Wilson* factors in the written decision, *see Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010), the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Rogers,* 486 F.3d at 242.

Finally, *Wilson* instructs that a harmless-error analysis applies to the good-reasons requirement:

> [W]here the ALJ fails to give good reasons on the record for according less than controlling weight to treating sources, we reverse and remand unless the error is a harmless *de minimis* procedural violation.  *See Wilson,* 378 F.3d at 547.  Such harmless error may include the instance where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," or where the Commissioner "has met the goal of ... the procedural safeguard of reasons." *Wilson,* 378 F.3d at 547.  However, the ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where we cannot engage in "meaningful review" of the ALJ's decision.  *Id.* at 544.

6

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).

The ALJ gave little weight to Dr. Yazdanbakhsh's February 11, 2013 physical capacity evaluation of Plaintiff because it was: (1) not supported by objective medical evidence; (2) highly dependent on Plaintiff's report of symptoms and limitations even though, based on other evidence in the record, the ALJ had deemed Plaintiff not wholly reliable as a self-reporter; (3) inconsistent with other evidence about Plaintiff's activities of daily living; and (4) inconsistent with the doctor's own treatment notes and records. (R. 49.) In declining to give controlling weight to Dr. Yazdanbakhsh's opinion, the ALJ further explained why the opinion was not supported by objective medical evidence and was inconsistent with the record as a whole. (*Id.*) In particular, the ALJ pointed to evidence in other portions of the record that Plaintiff's reported limitations in activities of daily living were not as serious as she reported to Dr. Meyer. He also noted instances of Plaintiff's non-compliance with treatment as evidence that Plaintiff's reporting of her symptoms and limitations was not fully credible. (R. 47, 49.) He also pointed out that there were no further treatment records from Dr. Yazdanbakhsh after January 21, 2013 and that there were significant gaps in the care that Plaintiff received at the pain clinic. (R. 48.) Finally, the ALJ concluded that one of Dr. Yazdanbakhsh's conclusions—her statement that Plaintiff could not use her hands for fine manipulation—was contradicted by the treatment notes at another clinic a few months later, which indicated that Plaintiff reported doing cross-stitching and using the computer, both of which would require significant fine manipulation. (R. 463, 476.) This explanation constitutes a proper application of the *Wilson* factors, because the ALJ weighed the supportability and consistency of the opinion and the nature and length of the treating relationship. *Wilson*, 378 F.3d at 544. Plaintiff's First Objection is overruled.

**B. The ALJ's Acknowledgment that Dr. Yazdanbakhsh Completed the Physical Capacity Evaluation**

Plaintiff next objects that the ALJ did not mention Dr. Yazdanbakhsh by name when he identified and analyzed the physical capacity evaluation that she authored.  (Doc. 20 at 6-7.)  Consequently, Plaintiff contends, the ALJ did not properly consider the evaluation because he did not realize it was completed by a treating physician.  The Magistrate Judge correctly concluded that the ALJ did have knowledge that Dr. Yazdanbakhsh completed the evaluation.  In his first mention of the February 11, 2013 physical capacity evaluation, the ALJ noted that "a doctor at [the Chillicothe Acute Care Clinic]" completed a prepared physical capacity evaluation form . . . ."  (R. 44.)  Later in the paragraph, after describing the content of the evaluation, the ALJ stated that "[a]lthough the claimant testified that she is treating with Dr. Yazdanbakhsh, the doctor at the pain clinic, there are no more recent records from this provider."  (*Id.*)  The ALJ also referred to Dr. Yazdanbakhsh later in the opinion as "the doctor herself" when discussing the weight to be given to her medical opinion, and his opinion acknowledged Plaintiff's hearing testimony that "she is still treating with the same pain doctor."  (*Id.* at 49, 48.)  The Court agrees with the Magistrate Judge that these references establish that the ALJ knew that Dr. Yazdanbakhsh authored the physical capacity evaluation.  Therefore, this objection is overruled.

**C. Weight Given to the Consultative Examining Psychologist**

Finally, Plaintiff contends that the ALJ improperly credited the opinions of non-examining sources over that of an examining source and, more specifically, that the ALJ erred by crediting opinions from non-examining sources that themselves had given great weight to the evaluation of the examining source.  (Doc. 20 at 8.)

An opinion from a medical examiner who has examined a claimant on only one occasion is "entitled to no special degree of deference." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  When weighing medical opinion evidence, a consultative examiner's opinion is to be weighed by considering the factors identified in 20 C.F.R. § 404.1527(c), including: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source providing the opinion.  Although the record "must contain substantial evidence supporting the rejection or discounting of a consultative examiner's opinion, social security regulations 'require[] ALJs to give reasons for only treating sources.'" *Nolan v. Comm'r of Soc. Sec.*, No. 2:12-CV-00477, 2013 WL 4831029, at *4 (S.D. Ohio Sept. 10, 2013) (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)).  An ALJ's "failure to discuss thoroughly the opinion of a consultative examiner does not warrant reversal." *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 468 (6th Cir. 2004) (holding that it was not reversible error when an ALJ failed to explain why he disregarded part of a consultative examiner's opinion).  But even though the explanatory requirement "does not apply to opinions from physicians who . . . have examined but not treated a claimant, the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (internal quotation marks and citations omitted).

Here, the ALJ assigned great weight to the assessments of the non-examining state agency doctors and only some weight to Dr. Meyer's opinion.  (R. 49.)  Dr. Meyer, a consultative psychologist, conducted a psychological examination of Plaintiff but had no treatment relationship with her.  Based on the examination, she determined that Plaintiff "would

be able to understand, remember and follow instructions in order to complete a basic work task"
but "if required to relate to others over sustained periods of time, she would demonstrate an
increase in isolative activities, leading to increased absenteeism from work." (R. 428-29.) The
non-examining consultants who assessed Plaintiff's mental residual functional capacity opined
that Plaintiff was capable of maintaining attention, making simple decisions, and adhering to a
schedule; relating to others on a superficial basis; and working in a setting where duties were
routine and predictable with well-explained changes. (R. 92-93, 106-07.) In explaining his
decision to accord only some weight to Dr. Meyer's opinion, the ALJ explained that the opinion
was not fully supported by objective medical evidence and was highly dependent upon Plaintiff's
own reports of her symptoms and limitations. (*Id.*) The ALJ further found that Plaintiff was
"not wholly reliable as a reporter of symptoms and limitations," and that Plaintiff's self-reports
to Dr. Meyer were inconsistent with the credible reports of her activities of daily living. (*Id.*)

Plaintiff contends that the ALJ should not have given more weight to the state agency
doctors than to Dr. Meyer, because the former did not examine her. *See* 20 C.F.R. §
404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined
you than to the opinion of a source who has not examined you."). In support of her position,
Plaintiff points out that the state agency consultants themselves gave "great weight" to Dr.
Meyer's opinion when issuing their own opinions. (R. 89, 103.) But whether the source
conducted an exam is only one of several factors that the ALJ considers when weighing medical
opinions. *See* 20 C.F.R. § 404.1527(c). Here, the ALJ also discussed the supportability and
consistency of the opinion, noting that it was highly reliant on Plaintiff's self-reporting and that
some of the information Plaintiff reported was inconsistent with other record evidence. (R. 46,
49.) For instance, Plaintiff told Dr. Meyer that she did nothing each day but eat one meal and

watch television and that she did not associate with anyone.  But she stated on a function report on May 25, 2012, six days before Dr. Meyer's examination, that she regularly prepared simple meals, did dishes and laundry, swept the floor, drove a car, and spent time babysitting young family members.  (R. 46; R. 423-35; R. 206-09.)  Further, the ALJ reasonably points to other evidence in the record that Plaintiff was not credible in reporting her symptoms and was frequently noncompliant with treatment.  (R. 46-48.)

Moreover, substantial evidence supports the ALJ's decision to credit the state agency doctors more than the consultative psychologist.  With the benefit of Dr. Meyer's descriptions of Plaintiff's presentation and responses to questions, as well as all of the other evidence in the record, the state agency doctors simply reached different conclusions about Plaintiff's functional limitations than Dr. Meyer did, and their conclusions were reasonable.  The ALJ properly found that the state agency doctors, despite not examining the plaintiff, presented opinions that were consistent with the record as a whole and supported by objective medical findings.  *See* 20 C.F.R. § 404.1527(c)(3)-(4).  The ALJ noted that the state agency doctors' opinions were consistent with other evidence of Plaintiff's activities of daily living, which contradicted Dr. Meyer's description of Plaintiff's self-reporting of such activities.  There is also objective medical evidence in the record, most notably Plaintiff's normal diagnostic examination results (*see* R. 48), that the ALJ was entitled to credit more than the subjective evidence in Dr. Meyer's evaluation, particularly because the ALJ also noted several instances where Plaintiff was less than credible about reporting her symptoms and limitations.  (R. 49.)  The ALJ complied with the mandate to "say enough to allow the appellate court to trace the path of his reasoning." *Stacey*, 451 F. App'x at 519 (internal quotation marks omitted).  Thus, it was not reversible error

for the ALJ to give only some weight to Dr. Meyer's opinion.  Plaintiff's Third Objection is overruled.

## V.    CONCLUSION

Based on the foregoing, this Court **ACCEPTS** and **AFFIRMS** the Magistrate Judge's Report and Recommendation and **OVERRULES** Plaintiff's Objections.  This case is hereby **DISMISSED**.  The clerk is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

                                        **___/s/ Algenon L. Marbley_____**
                                        **ALGENON L. MARBLEY**
                                        **UNITED STATES DISTRICT JUDGE**

**DATED:  September 28, 2015**